IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JONATHON MARK,

                              Plaintiff,

v.

MS. HUNEKE and JOHN DOE MEDICAL STAFF,

                              Defendants.

OPINION and ORDER

21-cv-650-jdp

---

Plaintiff Jonathon Mark, proceeding without counsel, alleges that medical staff denied him a thicker medical mattress for his back and leg pain even though other inmates were given thicker mattresses for similar problems. I granted Mark leave to proceed on claims under the Eighth Amendment to the United States Constitution. Dkt. 19.

Currently before the court are a series of submissions, including defendant Roslyn Huneke's motion to dismiss the John Doe defendants, Dkt. 29, and motion for summary judgment. Dkt. 35. I will dismiss the John Doe defendants because Mark failed to identify them, and I will grant Huneke's motion for summary judgment because Mark fails to show that she consciously disregarded his pain. The entire case will be dismissed.

PRELIMINARY MATTERS

I granted Mark leave to proceed on claims against defendant Huneke and unidentified John Doe medical staffers who worked together to deny him a medical mattress. The court's preliminary pretrial conference order set out deadlines for Mark to use discovery requests to identify the John Doe defendants and amend his complaint to add them. But Mark did not do so. Huneke moves to dismiss the John Doe defendants, Dkt. 29. Mark did not file a brief

opposing that motion. I will grant Huneke's motion and dismiss the John Doe defendants, leaving only defendant Huneke.

In this and his other cases, Mark has repeatedly filed motions to stay the proceedings or for extensions of time, largely because of changes in his housing circumstances and lack of writing materials in his places of incarceration. After Huneke filed her motion for summary judgment, the court granted Mark an extension of time to file his summary judgment opposition materials. Dkt. 46. Mark followed with another filing that the court construed as a motion for extension of time, Dkt. 47, and he shortly followed with his proposed findings of fact and supporting evidence, although not his opposition brief. Huneke moved to strike those filings as untimely or to extend her deadline to reply. Dkt. 52. The court denied the motion to strike but extended the summary judgment briefing schedule, giving Mark a final extension to submit his opposition brief and for Huneke's reply. Dkt. 55. Mark did not file an opposition brief, instead filing another motion to stay briefing and for recruitment of counsel, stating that his jail's law library is inadequate and he doesn't have enough writing supplies to submit a brief. Dkt. 56.

I will deny Mark's motion and I will consider the parties' summary judgment materials without an opposition brief from him. The court has already extended his deadlines multiple times, and Mark's writing-supply problems are largely caused by his insistence on litigating multiple federal lawsuits and an appeal at the same time, along with his state-court criminal proceedings. His proposed findings of fact are well-prepared and they outline his reasons for opposing summary judgment. There isn't good reason to delay this case even further or to recruit him counsel.

UNDISPUTED FACTS

I draw the following facts from the parties' proposed findings of fact and supporting evidence. These facts are undisputed unless otherwise noted. Huneke objects to many of Mark's proposed findings of fact as being unsupported by admissible evidence. But in many such instances Mark cites his declaration, which is sworn under penalty of perjury. *See* Dkt. 49. I will credit Mark's proposed findings that rely on his firsthand knowledge of events.

At the times relevant to the case, plaintiff Jonathon Mark was incarcerated at New Lisbon Correctional Institution (NLCI). Defendant Nurse Roslyn Huneke was the health services unit manager at NLCI.

Mark suffers from sciatic nerve pain. Mark was transferred to NLCI on July 29, 2020, and placed in a segregation unit. Because Mark had a permanent "medical mattress restriction" in his file, he was issued a medical mattress restriction at NLCI.

Mark was dissatisfied with the medical mattress that he received. It was only about four inches thick (about an inch thicker than the standard-issue mattress), worn, and it sagged in the middle. Mark weighed about 315 pounds, and the mattress did not support his weight. It "felt like he was laying directly on the concrete slab, or laying on a folded cardboard box that was laying on the concrete slab." Dkt. 49, ¶ 70. His sciatic pain progressively got worse after arriving at NLCI. He felt shooting pain down his legs and would wake up at night.

The day he arrived at NLCI, Mark submitted a health service request stating that he wasn't sure whether he had been given a medical mattress because it wasn't as thick as the medical mattress that he had at his previous prison, Oshkosh Correctional Institution, and that the new mattress "is doing nothing for [his] nerve pain." Dkt. 38-1, at 14. A nurse responded, "This medical mattress was issued . . . when you arrived." *Id.*

3

The next day, Mark submitted a health service request stating that the mattress didn't give him enough support and that he was in pain. Defendant Huneke responded that the mattress he received "is the type of medical mattress available at NLCI, and is the appropriate mattress for your restriction." *Id.* at 13.

As health services manager, Huneke was only authorized to order medical items that were approved for inmates in the institution, and items could only be ordered through an approved vendor with a contract with the DOC. Under state procurement rules, NLCI's medical mattresses were purchased from the Bureau of Correctional Enterprises, and a mattress could be purchased from another vendor only if approved by a body called the Special Needs Committee after a referral from an advanced care provider.

A few days later, on August 2, 2020, Mark submitted three health service requests. In his first request, he stated that his mattress was about half the thickness of the mattress he had at Oshkosh Correctional Institution, that it didn't provide him back support, and that he was requesting a second mattress "or a regular mattress to compensate." *Id.* at 12. Defendant Huneke responded, "Double mattresses are not safe and not allowed. The medical mattress you were given is appropriate." *Id.* DOC medical policy explicitly states that double mattresses should not be used. Huneke spoke with Bureau of Health Services Coordinator Holly Gunderson to confirm that double mattresses should not be used.

In his second request, he stated that Oshkosh Correctional Institution had set up an offsite appointment for traction treatment and he asked about "inversion" as another possible treatment. Huneke responded that she would ask whether physical therapy could be resumed at NLCI and stated that an appointment with a pain specialist was being scheduled, but that

4

there had been no referral at Oshkosh Correctional Institution for an offsite appointment so that would not be occurring.

In his third request, he stated that he had been telling medical staff for six months that his prescribed duloxetine was not helping with his pain. He requested gabapentin. Huneke responded that Mark had an appointment scheduled with his advanced care provider and with a pain specialist for epidural injections.

Two days later, Mark submitted a health service request asking for two more blankets so that he could place them underneath his mattress, or for permission for him to purchase his own medical mattress. Huneke responded that he would not be approved to buy his own mattress, and that he would have to discuss the blanket request with his doctor at his next appointment.

Several days later, Mark submitted a health service request stating that nothing was working to address his pain. A nurse responded that staff was still working on scheduling an appointment with the pain specialist and that Tylenol was added to his list of medications.

Almost two weeks later, on August 16, 2020, Mark submitted a health service request stating that the institution complaint examiner had directed him to contact Huneke about his mattress complaints, and asking to be provided the same type of medical mattress that he had had at Oshkosh Correctional Institution. Huneke responded, "You have been given the medical mattress available to our facility. It is an appropriate medical mattress." *Id.* at 10.

In late August, Mark filed an inmate grievance stating that the medical mattresses at NLCI were inferior to those at Oshkosh Correctional Institution and that they were ineffective at treating his sciatic nerve pain. I take Mark to be saying that the grievance and its appeal

were unsuccessful. In his appeal, Mark stated that Huneke falsely told complaint examiners that Mark could jump out of his bed and bend over without signs of pain.

In early September, Mark submitted a health service request saying that he was "providing notice" that his medical mattress was "not doing what it is meant to do" and that it was "ineffective for sciatic pain." *Id.* at 9. The nurse responding to that request marked boxes indicating that Mark was scheduled to be seen by an advanced care provider.

About a week later, Mark sent Huneke a letter explaining how his medical mattress and prescribed duloxetine was not working to ease his pain, that HSU staff hadn't done anything to address his many complaints, and that he would like a better medical mattress. It took Huneke about two weeks to respond to the letter. Huneke stated that the medical mattresses available at NLCI were the only type of medical mattresses that they could order for inmates and that the mattress that he was provided was appropriate for his medical restriction. Huneke stated that although he reported worsening pain at NLCI, he had made the same types of complaints at his previous prison, in particular that his mattress was inadequate, his medication was insufficient, and any benefit from therapy was short lived. Huneke explained that HSU staff were aware of Mark's medical needs and plan of care and would continue to evaluate and treat his pain as ordered by his provider, Dr. Hoffmann. She stated, "You asked to discontinue the duloxetine so that has been stopped." *Id.* at 3. She noted that Hoffman had recently added amitriptyline to his medication regimen, that he had received referrals to physical therapy and a pain specialist.

Mark states that at some point his medical mattress was removed and he was placed in general population. Staff told him that there were no medical mattresses available and gave him a standard-issue mattress. Mark was released from NLCI in late November 2020.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Mark contends that Huneke violated his rights under the Eighth Amendment, which prohibits prison officials from acting with conscious disregard toward prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). Huneke appears to concede that Mark's back and leg pain was a serious medical need.

A defendant "consciously disregards" an inmate's need when the defendant knows of and disregards "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

Mark alleges that Huneke and others intentionally chose to deny Mark a thick medical mattress comparable to those he had previously received at Oshkosh, even though other inmates received them. In some of her responses to Mark's request and in her summary judgment briefing, Huneke states that Mark's medical mattress was sufficient to meet his medical restriction. It is at least disputed whether that is correct.

Huneke argues that Mark offers no expert testimony to show that his pain was caused by the medical mattress. The court previously explained in denying one of Mark's motions for

7

assistance in recruiting counsel that if the case boils down to expert testimony that might be reason to recruit counsel for him. Dkt. 46. In any event, I disagree with Huneke's contention that expert testimony is necessary to prove that the mattress contributed to Mark's pain: Mark is not qualified to testify about the nuances of sciatica, but a layperson is qualified to testify about pain he feels after sleeping in an uncomfortable position.

Mark informed Huneke though his various health service requests and other prison documents that the mattress did not give him proper back support and that his pain was exacerbated while using it. Healthcare providers may not persist with treatment that they know to be ineffective. *Gonzalez v. Feinerman*, 663 F.3d 311, 314–15 (7th Cir. 2011). A reasonable jury could infer that Huneke knew that the medical mattress wasn't working to ease Mark's pain.

Nonetheless, that does not mean that Huneke consciously disregarded Mark's pain by failing to give him a different medical mattress. The undisputed facts make clear that Huneke did not have a thicker mattress like those at Oshkosh Correctional Institution available to give Mark. She explains that she gave Mark the standard medical mattress available at NLCI. Mark states that a couple of NLCI inmates had thicker mattresses, but nothing in the facts suggests that there were more of these mattresses unused and available to be given to Mark, or that Huneke had the authority to order one. Mark argues that he didn't receive *any* type of medical mattress, but this is belied by his own testimony that the medical mattress that he received was thicker than the standard-issue mattress for inmates without medical restrictions.

The evidence also shows that Huneke did not have the authority to order a thicker mattress for him herself: that order would have had to come from the Special Needs Committee after a referral from Mark's treating doctor. Mark states that Dr. Hoffmann never told him

that he could make a referral to the Special Needs Committee, but that is irrelevant to the question whether Huneke disregarded Mark's pain.

Mark states that Huneke lied to the institution complaint examiner considering his grievance about the mattress by saying that that he could ambulate without pain. Although it was his burden to do so, Mark didn't submit any of the rulings on this grievance, so it is impossible to tell whether Huneke's testimony was the decisive factor in the rulings. And in any event, Mark doesn't explain how a ruling in his favor would have helped him: there is no indication that a grievance examiner could order the purchase of a mattress without approval of the doctor or Special Needs Committee.

Even assuming that Huneke could have taken some other action to address Mark's pain, like contacting the doctor or Special Needs Committee herself to lobby for a new mattress, her failure to do so could not lead a reasonable jury to conclude that she violated the Eighth Amendment. In considering medical care claims, I must consider the totality of care that Huneke received, not just pick apart individual decisions. *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). And prisoners are not entitled to the treatment of their choice. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019). Huneke took other steps to assist Mark with his complaints, including checking with supervisors about using double mattresses and the availability of physical therapy, and she told Mark to talk to his doctor about using extra blankets for support. And otherwise the medical staff directly treating Mark were aware of his complaints of pain and they treated it in various ways, such as various types of pain medication, including attempts at switching medications when Mark stated they weren't working, treatment by a pain specialist, and physical therapy. Huneke was aware of this treatment and knew that Dr. Hoffman could have requested a new mattress from the

9

Special Needs Committee. She did not violate the Eighth Amendment by relying on Hoffman's treatment decisions.[1]

Mark also states that at some point his medical mattress was removed entirely about the time that he was sent to general population. But there is no evidence that defendant Huneke played any role in this decision, so Mark cannot succeed on an Eighth Amendment claim about these events. I will grant Huneke's motion for summary judgment and dismiss the case.

## ORDER

IT IS ORDERED that:

1. Defendant's motion to dismiss the John Doe defendants, Dkt. 29, is GRANTED.

2. Plaintiff Jonathon Mark's motion for extension of time and for recruitment of counsel, Dkt. 56, are DENIED.

3. Defendant's motion for summary judgment, Dkt. 35, is GRANTED.

4. The clerk of court is directed to enter judgment for defendants and close the case.

Entered August 15, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge

---

[1] Defendant Huneke also contends that she is entitled to qualified immunity on Mark's claim. Because I am dismissing Mark's claim on the merits, I need not consider Huneke's qualified immunity argument.